**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

REC SOLAR GRADE SILICON LLC,

Plaintiff,

v.

THE SHAW GROUP INC. and SHAW
PROCESS FABRICATORS, INC.,

Defendants.

No. CV-09-188-RMP

**ORDER GRANTING THE
PARTIES' JOINT MOTION FOR
A PROTECTIVE ORDER AND
AGREED PROTECTIVE ORDER**

Before the Court is the parties' Joint Motion for Protective Order (the

**"Motion"**) (ECF No. 185) and [Proposed] Agreed Protective Order (ECF No. 185-

1). Having reviewed the motion and the proposed protective order, the Court finds

good cause to grant the motion and enter the protective order.

Accordingly, **IT IS HEREBY ORDERED** that the Motion for Protective

Order (**ECF No. 185**) is **GRANTED** and the following Agreed Protective Order is

entered:

**1.     Proceedings and Information Governed**.

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE
ORDER AND AGREED PROTECTIVE ORDER ~ 1

This Agreed Protective Order (**"Protective Order"**) is made under Federal Rule of Civil Procedure 26(c). The Protective Order applies to any document, information, or other tangible or intangible thing (collectively, **"documents"**) furnished by a party to any other party, as well as documents furnished by non-parties who receive subpoenas in connection with this action, including documents that are deemed to be "Confidential Information" or designated by a party or non-party as "Highly Confidential Information" in accordance with the terms of this Protective Order. This Protective Order also applies to copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information or data containing, reflecting, or disclosing all or parts of designated documents.

2.    **Designation and Maintenance of Documents and Information**.

A.    The "Confidential Information" designation means that the document contains trade secrets or commercial information not publicly known, which trade secrets or commercial information is of technical or commercial advantage to its possessor, in accordance with FED. R. CIV. P. 26(c)(1)(G), or other information required by law or agreement to be kept confidential.

B.    The "Highly Confidential Information" designation means that the document contains information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, any other sensitive trade secret information, or

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 2

information capable of being utilized for the preparation or prosecution of a patent application dealing with such subject matter.

C.    "Confidential Information" and "Highly Confidential Information" does not include, and this Protective Order does not apply to (i) information already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by an agreement not to disclose such information, or (ii) information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

**3.    Documents Produced in Discovery and Depositions.**

**A.    Documents and things.**

Unless otherwise noted as "Highly Confidential Information," all documents and things produced during the course of this litigation by any party or third party shall be deemed as containing "Confidential Information," irrespective of whether such a written notation is placed on the item itself, but such documents and things produced may also be designated as "Confidential Information" by placing on each page and each thing a legend substantially as follows:

**CONFIDENTIAL**

Documents and things produced during the course of this litigation within the scope of paragraph 2(A) above may be designated by the producing party as

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE
ORDER AND AGREED PROTECTIVE ORDER ~ 3

containing "Highly Confidential Information" by placing on each page and each thing a legend substantially as follows:

## **HIGHLY CONFIDENTIAL INFORMATION**

**B.    Depositions**

(i)    For deposition testimony or exhibits to be entitled to protection under this Order, a party must designate the testimony and exhibits disclosed at a deposition as "Confidential Information" or "Highly Confidential Information" by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition.

(ii)    If no such designation is made at the time of the deposition, any party has fourteen (14) days after delivery by the court reporter of the transcript of the deposition session to designate, in writing to the other parties and to the court reporter, what portions of the transcript and which exhibits the party designates as "Confidential Information" and "Highly Confidential Information."

(iii)    During the transcription and following fourteen (14) day period after a deposition session, the transcript and exhibits must be treated as Confidential Information, unless the disclosing party consents to less confidential treatment of the information.

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 4

(iv)    Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript and each copy of the transcript in its possession, custody or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order.  It is the responsibility of counsel for each party to maintain materials containing Confidential Information or Highly Confidential Information in a secure manner and appropriately identified so as to allow access to such information only to such persons and under such terms as is permitted under this Protective Order.

(v)    If no such designation is made at the deposition or within the fourteen (14) day period following delivery of the transcript, then the entire deposition will be considered devoid of Confidential Information or Highly Confidential Information.

**4.    <u>Inadvertent Failure to Designate</u>.**

A.    Notwithstanding the parties' agreement that all documents and things produced during this litigation shall be treated, by default, as "Confidential Information," the inadvertent failure to designate documents as "Confidential Information" or "Highly Confidential Information" will not be a waiver of a claim that the document contains confidential information, and will not prevent the producing party from designating such information as confidential at a later date in writing, so long as the designation is done with particularity.

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 5

B.    In the event a producing party late designates a document as "Confidential Information" or "Highly Confidential Information," the document must be treated by the receiving party as confidential from the time of receipt of the notice of the "Confidential Information" or "Highly Confidential Information" designation.

**5.    Challenges to Designations**.

A receiving party may challenge the default classification or a producing party's designation of documents "Confidential Information" or "Highly Confidential Information" through the following procedures:

A.    A receiving party may challenge a producing party's designation at any time.  The receiving party shall request in writing that the producing party change the designation.  Within seven (7) days after receipt of this written request, the producing party must advise the receiving party in writing whether or not the producing party will change the designation.

B.    If the parties are unable to reach agreement after the expiration of this seven (7) day period, they shall confer.  If they cannot resolve the issue, the receiving party may seek an order to alter or remove the confidential status of the designated information.

C.    Until the presiding judge has ruled on a dispute under this paragraph, the "Confidential Information" or "Highly Confidential Information" designation

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 6

will remain in full force and effect, and the document continues to be protected by this Protective Order.

**6.    Disclosure and Use of Confidential Information**.

A.    Information designated as "Confidential Information" or "Highly Confidential Information" may only be used for purposes of preparation (including but not limited to all fact and expert discovery and all pre-trial motions), trial, and appeal of this action.

B.    Subject to the provisions of this Paragraph and Paragraph 9 below, "Confidential Information" may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(i)    current or former employees, agents, or contractors of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, including any settlement discussions;

(ii)    in-house counsel;

(iii)    outside counsel of record for the receiving party;

(iv)    supporting personnel employed by persons identified in paragraphs 6B(ii) and 6B(iii), such as paralegals, legal secretaries, data entry clerks, legal clerks, and private photocopying services;

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 7

(v)    experts or consultants to whom disclosure is reasonably necessary for this litigation and who have signed the Confidentiality Agreement in the form attached as Exhibit A ;

(vi)    any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, translation services, court reporting services, demonstrative exhibit preparation, or the creation of any computer database from documents;

(vii)    any bona fide deponents, witnesses, or prospective witnesses (and any counsel of any such deponent/witness) in the case, as long as:

(1)    the deponent, witness, or prospective witness has been asked to sign the Confidentiality Agreement in the form attached as Exhibit A; and

(2)    counsel for the disclosing party reasonably and in good faith believes such disclosure is reasonably necessary for the prosecution or defense of the case; and

(3) in the event a non-party deponent or witness declines to sign the Confidentiality Agreement in the form attached as Exhibit A:

(i)    Confidential Information may be disclosed to such deponent/witness but neither the deponent/witness nor counsel for the deponent/witness shall retain the original or a copy of the Confidential Information;

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 8

(ii)    The parties shall instruct the court reporter not to send a copy of any exhibits containing Confidential Information to the deponent/witness or counsel for the deponent/witness, even when sending a copy of the deposition transcript for the deponent/witness's review and signature; and

(iii)    Should the deponent/witness fail to sign the deposition, the parties agree that no party shall object to the admissibility of the deponent/witness's deposition testimony on the basis that the deposition was not signed.

(viii)  those individuals designated in paragraph 6(F)(iii) below.

C.    Subject to the provisions of this Paragraph and Paragraph 9 below, "Highly Confidential Information" may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(i)    outside counsel of record for the receiving party;

(ii)    supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data entry clerks, legal clerks, private photocopying services;

(iii)    experts or consultants to whom disclosure is reasonably necessary for this litigation and who have signed the Confidentiality Agreement in the form attached as Exhibit A;

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 9

(iv)    any bona fide deponent, witnesses, or prospective witnesses (and any counsel of any such deponent/witness) in the case, as long as:

(1)    the deponent, witness, or prospective witness has been asked to sign the Confidentiality Agreement in the form attached as Exhibit A; and

(2)    counsel for the disclosing party reasonably and in good faith believes such disclosure is reasonably necessary for the prosecution or defense of the case; and

(3) in the event a non-party deponent or witness declines to sign the Confidentiality Agreement in the form attached as Exhibit A:

(i)    Highly Confidential Information may be disclosed to such deponent/witness but neither the deponent/witness nor counsel for the deponent/witness shall retain the original or a copy of the Highly Confidential Information;

(ii)    The parties shall instruct the court reporter not to send a copy of any exhibits containing Highly Confidential Information to the deponent/witness or counsel for the deponent/witness, even when sending a copy of the deposition transcript for the deponent/witness's review and signature; and

(iii)    Should the deponent/witness fail to sign the deposition, the parties agree that no party shall object to the admissibility of the

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 10

deponent/witness's deposition testimony on the basis that the deposition was not signed.

(v)    those individuals designated in paragraph 6(F)(iii) below.

E.    Counsel is responsible for the adherence by third-party vendors to the terms and conditions of this Protective Order.  Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit A.

F.    "Confidential Information" or "Highly Confidential Information" may be disclosed to a person who is not already allowed access to such information under this Protective Order *if*:

(i)    the information was previously received or authored by the person or was authored or received by a director, officer, employee or agent of the company for which the person is testifying as a designee under FED. R. CIV. P. 30(b)(6);

(ii) the designating party is the person or is a party for whom the person is a director, officer, employee, consultant or agent; or

(iii) counsel for the party designating the material agrees that the material may be disclosed to the person.

In the event of disclosure under this section 6(F), only the reporter, the person, his or her counsel, the presiding judge, and persons to whom disclosure

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 11

may be made and who are bound by this Protective Order, may be present during the disclosure or discussion of Confidential Information.

Disclosure of material pursuant to this section 6(F) does not constitute a waiver of the confidential status of the material so disclosed.

### 7.    **Non-Party Information**.

A.    The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action that may reasonably be expected to desire confidential treatment for such documents, tangible things or testimony.  Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

B.    Unless otherwise noted as "Highly Confidential Information," <u>all</u> documents and things produced during the course of this litigation by any third party shall be deemed as containing "Confidential Information," irrespective of whether such a written notation is placed on the item itself.

With respect to documents received from a third-party, a party or third-party may designate documents as "Highly Confidential Information" under this Protective Order if, within fourteen (14) days of receipt of the documents, the designating party or third-party communicates to all parties its desire to so designate the documents either by: (1) identifying each document (including its

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 12

bates numbers or Index Numbers) and the desired designation for each document, or (2) following the procedures in Paragraph 3(A), above.  During the 14-day period, the parties shall treat such documents received from the third-party as "Confidential Information."

**8.**    **Filing Documents With the Court**.

Any party may submit Confidential Information or Highly Confidential Information to the court under seal by designating the document "sealed" in the CM/ECF system of the court or may deliver the document for filing by the Clerk's Office.  If a party delivers a copy to the Court, the document must be in a sealed envelope bearing the caption of this action and a label containing the following:

<u>**CONFIDENTIAL INFORMATION**</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| REC SOLAR GRADE SILICON LLC, | No. CV-09-188-RMP |
|---|---|
| Plaintiff, | |
| v. | **CONFIDENTIAL INFORMATION PURSUANT TO AGREED PROTECTIVE ORDER** |
| THE SHAW GROUP INC. and SHAW PROCESS FABRICATORS, INC., | |
| Defendants. | Hon. Rosanna Malouf Peterson |

**This envelope, which is being filed under seal, contains documents that are subject to a <u>Protective Order</u> governing the use of confidential discovery material.**

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 13

**9.    No Prejudice.**

Producing or receiving "Confidential Information" or "Highly Confidential Information," or otherwise complying with the terms of this Protective Order, will *not*:

(a)    operate as an admission by any party that any particular "Confidential Information" or "Highly Confidential Information" contains or reflects trade secrets or any other type of confidential or proprietary information;

(b)    prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery;

(c)    prejudice the rights of a party to seek a determination by the Court that particular materials be produced;

(d)    prejudice the rights of a party to apply to the presiding judge for further protective orders; or

(e)    prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

**10.    Conclusion of Litigation.**

Within sixty (60) days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) days after dismissal pursuant to a

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 14

settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to (1) destroy or return to the producing party all documents deemed or designated "Confidential Information" or "Highly Confidential Information"; and (2) certify to the producing party that this destruction or return has been done. However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work product provided that any such materials are maintained and protected in accordance with the terms of this Protective Order.

**11.    Other Proceedings.**

By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who may be subject to a motion to disclose another party's information deemed or designated "Confidential" or "Highly Confidential" pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**12.    Clawback of inadvertently produced documents.**

A.    For purposes of this Protective Order, an "Inadvertently Produced Document" is a document produced to a party in this litigation that (i) could have

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 15

been withheld, in whole or in part, based on a legitimate claim of attorney-client privilege, work-product protection, or other applicable privilege, provided that the producing party meets the requirements of Federal Rule of Evidence 502(b), or (ii) is not responsive to any of the receiving party's document requests.

B.      Inclusion of any Inadvertently Produced Document in a production shall not result in the waiver of any privilege or protection associated with such document, nor result in a subject-matter waiver of any kind, unless it meets the requirements of Federal Rule of Evidence 502(a).  Pursuant to Federal Rule of Evidence 502(d), the Court orders that if inclusion of an Inadvertently Produced Document in a production in this lawsuit does not waive privilege or protection, or result in a subject-matter waiver, in this lawsuit, then such inclusion also does not waive privilege or protection or result in a subject-matter waiver in any other federal or state proceeding.

C.      A producing party may demand the return of any document that it claims is an Inadvertently Produced Document.  Such a demand shall be made to the receiving party's counsel in writing and shall contain information sufficient to identify the Inadvertently Produced Document.  Within five (5) business days of the demand for an Inadvertently Produced Document that is subject to a privilege or protection, the producing party shall provide the receiving party with a privilege log for such document that is consistent with the requirements of the Federal Rules

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 16

of Civil Procedure, setting forth the basis for the claim of privilege for the Inadvertently Produced Document.

D.    Upon receipt of the producing party's demand for return of an Inadvertently Produced Document, the receiving party shall immediately return the Inadvertently Produced Document (and any copies thereof) to the producing party and shall immediately delete all electronic versions of the document.

E.    The receiving party may object to the producing party's designation of an Inadvertently Produced Document by providing written notice of such objection within seven (7) days of its receipt of the producing party's demand for the return of the Inadvertently Produced Document.  To resolve this objection, the receiving party shall file a motion to compel with the Court seeking production of the document.  The Court shall resolve the objection after considering the parties' arguments and, should the Court deem it necessary, conducting an *in camera* review of the Inadvertently Produced Document.  Absent an Order from the Court overruling the objection, the responding party shall not use the Inadvertently Produced Document in the litigation.

**13.    Protocol for ESI discovery and production**.

The parties have agreed to the Protocol attached as Exhibit B for the discovery and production of electronically stored information (**"ESI"**).  It is **ORDERED** that the Protocol is incorporated by reference into this Protective

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 17

Order, and that the Protocol shall govern all discovery and production of ESI in this case.

**14.   <u>Relief from Protective Order</u>.**

Any party may move the Court to modify a term or condition of this Protective Order for good cause shown.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 13th day of May, 2011.


_____ *s/ Rosanna Malouf Peterson* _____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING THE PARTIES' JOINT MOTION FOR A PROTECTIVE ORDER AND AGREED PROTECTIVE ORDER ~ 18

## **Exhibit A**

CONFIDENTIALITY AGREEMENT

I, _____ [print or type full name], of _____

_____ [print or type full address], declare under penalty of perjury that I

have read in its entirety and understand the Protective Order that was issued in the

case of *REC Solar Grade Silicon LLC v. The Shaw Group Inc. and Shaw Process

Fabricators, Inc.*, Case Number CV-09-188-RMP.  I agree to comply with and to

be bound by all the terms of this Protective Order and I understand and

acknowledge that failure to so comply could expose me to sanctions and

punishment in the nature of contempt.  I solemnly promise that I will not disclose

in any manner any information or item that is subject to this Protective Order to

any person or entity except in strict compliance with the provisions of the

Protective Order.  I understand that, by executing this Confidentiality Agreement, I

submit to the jurisdiction of the United States District Court for the Eastern District

of Washington for enforcement of the Protective Order.


Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

**Exhibit B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| REC SOLAR GRADE SILICON LLC, | No. CV-09-188-RMP |
| Plaintiff, | |
| v. | **PROTOCOL FOR DISCOVERY & PRODUCTION OF ELECTRONICALLY STORED INFORMATION** |
| THE SHAW GROUP INC. and SHAW PROCESS FABRICATORS, INC., | |
| Defendants. | Hon. Rosanna Malouf Peterson |

**1.**   **Scope**.

This Protocol for Discovery and Production of Electronically Stored Information (the **"Protocol"**) governs all discovery and production of ESI (as defined below) in this case, and has been incorporated by reference into the Agreed Protective Order issued by the Court.

**2.**   **Definitions**.

In this Protocol, the terms described below have the following meanings:

a.   **"ESI"** refers to electronically stored information as defined in the Federal Rules of Civil Procedure.

b.    **"Native File"** means ESI in the electronic format of the application in which such ESI was created, viewed and/or modified.  Native Files are a subset of ESI.

c.    **"Metadata"** means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information within the Native File generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.  Metadata is a subset of ESI.

d.    **"Static Image"** means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.  Static Images include images in the Tagged Image File Format ("tiff" files with the ".tif" extension) or Portable Document Format ("Acrobat" files with the ".pdf" extension).

e.    **"Index Number"** means a unique identification code comprised of a letter prefix and numbers assigned to a particular document.  For Static Images and paper documents, Index Numbers include any bates numbers printed on the document.  For Native Files, the Index Numbers include any unique numbers appended to the filenames or otherwise assigned to the Native Files.

f.    **"Custodian"** means an individual whose ESI is within the possession, custody, or control of the producing party.

**3.    Collection and Production of ESI.**

**A.    Limitation of ESI collection and review.**

The parties agree that the volume of ESI in this matter is significant, and that the parties would have to incur a significant cost to conduct a visual review of each and every item of ESI generated by the parties that is potentially responsive to the parties' respective discovery requests. The parties agree that this cost would impose an unreasonable burden on both the producing and the receiving parties. To reduce this cost and to increase the likelihood that the ESI produced will be responsive to the requesting parties' discovery requests, the parties shall not be required to collect and review any ESI except to the extent set forth in this Paragraph 3.

**B.    Initial ESI searches.**

The parties shall conduct initial limited searches to collect ESI for review in response to the requesting parties' discovery requests. Subject to the other provisions of this Paragraph 3, the producing parties shall not be required to collect or review any ESI that is not within the results of the searches. Such searches shall be limited by Custodians, dates, and keyword search terms, as set forth for each party below.

**C.    Initial searches by Defendants The Shaw Group Inc. and Shaw Process Fabricators, Inc.**

(i)    Custodians.

ESI searches for Defendants The Shaw Group Inc. and Shaw Process Fabricators, Inc. (**"Shaw"**) shall be limited to ESI from the following Custodians:

1.    Doyle Bailey
2.    Remi Bonnecaze
3.    Ronald Branch
4.    Cathy Caldwell
5.    Dave Chapman
6.    Sheri Danna
7.    Mikel Deville
8.    Ronnie Dvorak
9.    Keith Ezell
10.   Linda Futch
11.   Ron Gilkey
12.   Gerald Griggs
13.   Randy Hall
14.   Firdosh Kavarana
15.   Jeff Lazenby
16.   Jerry LaFleur
17.   Suzan LeFleur
18.   Jack Martin
19.   Ashley McIntosh
20.   David Morton
21.   Kamlesh Panwala
22.   Rodney Pardue
23.   Doug Percle
24.   Jarrod Smith
25.   Richard Squyres
26.   Ed Weaver
27.   Stephanie Zimmer
28.   Kenny Zirkle

1

(ii)    Dates.

2

ESI searches for Shaw shall be limited to ESI generated or

3

4

modified within the period from January 1, 2007 to the present.

5

(iii)    Keyword search terms.

6

7

ESI searches for Shaw shall be limited to ESI located using a

8

keyword search that meets one of the criteria in the enclosed Exhibit B-2.

9

**D.    Initial searches by Plaintiff REC Solar Grade Silicon, LLC.**

10

11

(i)    Custodians.

12

ESI searches for Plaintiff REC Solar Grade Silicon, LLC

13

14

(**"REC"**) shall be limited to ESI from the following Custodians:

15

1.    Eric Benson

16

2.    Jack Bess

17

3.    Michele Bingham
4.    Wayne Blackmon

18

5.    Scott Brown

19

6.    Wade Diehl

20

7.    Jim Flores
8.    Omar Garza

21

9.    Steve Godfrey

22

10.    Brandon Green

23

11.    Tor Hartmann
12.    Steve Hastings

24

13.    Henry Hermanas

25

14.    Wade Hodgson

26

15.    Richard Hogsett
16.    Jeff Johnson

27

17.    Kirt Johnson

28

18.    George LeBlanc
19.    Don Moreau
20.    Mike Peirsol

**PROTOCOL FOR ESI DISCOVERY AND PRODUCTION**                    **Page 6**

21. Ray Powell
22. Jeff Price
23. James Simiskey
24. Kent Stephens
25. Tony Thompson
26. Jerry Tippett
27. Karen Warren
28. Greg Wiltsey

(ii)    Dates.

ESI searches for REC shall be limited to ESI generated or modified within the period from January 1, 2006 to the present.

(iii)    Keyword search terms.

ESI searches for REC shall be limited to ESI located using a keyword search that meets one of the criteria in the enclosed Exhibit B-3.

**E.    Supplemental ESI Searches**

(i)    The parties recognize that through the course of the lawsuit and the discovery process, information obtained may give rise to a party's belief that a supplemental ESI search is necessary.  Following the initial ESI searches and productions completed pursuant to this Paragraph 3 (or, as necessary, while such initial ESI productions are ongoing), a receiving party, upon good cause shown, may request that the producing party conduct one or more supplemental searches and production using different custodians, dates, and/or keyword search terms. The receiving party's request for a supplemental search may include ESI (including specific documents) that would not necessarily have been captured by

the initial searches.  If the producing party objects to the supplemental search for any reason, including objections that the receiving party has failed to show good cause for the requested supplemental search or that the expense of conducting the search and reviewing its results is excessive, the requesting party may seek relief from the Court.

(ii)    Moreover, the parties acknowledge that disputes exist between them with respect to the objections each has asserted to the other's document requests and the obligation to search or produce ESI in a foreign language (e.g., Norwegian) or to search sources of ESI located outside of the United States (including  REC's parent corporation located in Norway), and the initial ESI searches described in this Protocol only reflect those categories of documents the parties have agreed to produce to each other.  The parties agree that by entering into this Protocol no party is waiving, and each party expressly reserves, its right to seek additional data from the opposing party by agreement or Court order.

(iii)   The parties agree that this Paragraph 3(E) is not intended to nullify or render meaningless the benefits to be obtained from the initial searches.  Rather, Paragraph 3(E) recognizes that the parties have not entirely resolved (and do not waive their respective positions relating to) their disagreements regarding the scope of document discovery each party is entitled to from the other, and that the

parties might need to conduct supplemental searches after the initial searches have been completed.

**F.     Sources not reasonably accessible to the parties.**

The producing parties are not required to conduct any searches in Paragraph 3 through any sources not reasonably accessible to the parties, unless the ESI is unavailable through sources that are reasonably accessible to the parties.  Sources not reasonably accessible to the parties include any backups of the ESI.  Sources reasonably accessible to the parties include any ESI currently stored on the producing party's computer systems.

Each producing party may presume that all requested ESI is available through sources reasonably accessible to the producing party unless: (1) the producing party is aware that specific ESI from a Custodian that is responsive to the requesting party's discovery requests is unavailable from sources reasonably accessible to the producing party; or (2) the receiving party identifies specific ESI from a Custodian of the producing party that is responsive to the requesting party's discovery requests and has not been produced, the specific ESI is not already in the possession of the receiving party, and the producing party is aware that such ESI is available only from sources not reasonably accessible to the producing party.

**G.          ESI containing languages other than English.**

The parties do not waive any rights to seek or resist production of foreign-language ESI.

**H.    Production of ESI Data.**

The parties agree that any and all data captured by any ESI search, whether initial or supplemental, shall be considered the same as paper documents or files under the applicable Federal Rules of Civil Procedure and Evidence for purposes of production.  Specifically, non-responsive and privileged ESI data can, in good faith, be withheld from production and each party can, in good faith, withhold ESI data based upon objections asserted in its responses to the opposing party's Requests for Production.

Each party shall produce the ESI data captured by the initial or any supplemental search, subject to any data being withheld as contemplated and discussed in the preceding paragraph, within a reasonable time following completion of said search.  However, the producing party shall have no obligation to provide a privilege log to the receiving parties listing any items of ESI Data that have been withheld on the basis of privilege.

For purposes of this section 3(H), the term "ESI data" shall include all ESI as defined by this Order, as well as printed copies of emails.

4.    **De-duplication of collected ESI.**

The parties recognize that ESI often contains files that are duplicates of other files in the collection, and that elimination of such duplicates helps the parties to reduce the overall cost of production and review.  Each party shall take reasonable steps to eliminate duplicates from their ESI collections prior to review.

The parties also recognize that some ESI duplicates are "near-duplicates" rather than exact copies of the files, with small differences that are immaterial to responsiveness.  For example, ESI generated by an e-mail sent from one Custodian to another within the producing party may include copies of both the sent and received e-mails.  Such copies may contain different time stamps due to the time needed to move through the server or the different time zones of the sender and the recipient.  The parties may seek to eliminate near-duplicates using reasonable criteria intended to avoid immaterial differences between the ESI files.  In the example of e-mail, parties may compare multiple fields within the e-mail such as the senders, recipients, dates sent, and subject line to locate the near-duplicates. The parties recognize that such attempts can carry the risk that some non-duplicate e-mails will be erroneously identified as near-duplicates and excluded from the review.  Each party agrees that elimination of near-duplicates is still permissible despite this risk, provided that each party (or its vendor) retains copies of the duplicate or near-duplicate ESI excluded from review.  Upon request, the

producing party shall provide the receiving party with a description of any de-duplication process and criteria applied to the ESI for collection, along with a report stating how many files were excluded from the review as a result of de-duplication.

The parties have agreed to use the MD5 hash values to de-duplicate files stored on network drives or hard drives, and to use the following fields to derive de-duplication values for e-mail:

        Subject
        Recipients
        From/Author
        Email Date and Time
        CC
        Attachment Count
        BCC

**5.      Production format.**

Unless the parties agree otherwise or the Court issues an Order to the contrary, ESI shall be produced in the following formats.  Any lists of extensions are intended as examples only, and do not constitute exclusive lists of files that fall within the categories specified.  Any party producing ESI as Native Files with extensions or in file formats other than those specified in the paragraphs below shall, upon request, provide the receiving party with an identification of the software needed to view the files.

**A.      E-mails and electronic calendar entries.**

E-mails and electronic calendar entries shall be produced as Native Files. E-mails and calendar entries include files used under any e-mail or calendaring program including Microsoft Outlook (including the extensions .msg, .pst, and .ost), Lotus Notes, and online services accessible through the producing party's intranet or the Internet.

**B.     E-mail attachments.**

For e-mails produced as Native Files, the attachments to each e-mail shall be produced either as part of the e-mail's Native File, or as Native Files with Index Numbers immediately following the Index Number of the e-mail.

**C.     Word processing files.**

Files generated or modified by word processing programs shall be produced as Native Files. Word processing programs include Microsoft Word (including files with the .doc or .docx extensions), WordPerfect (including files with the .wpd extension), and Windows Wordpad and Notepad (including files with the .txt extension).

**D.     Spreadsheets.**

Files generated or modified by spreadsheet programs shall be produced as Native Files. Spreadsheet programs include Microsoft Excel (including files with the .xls or .xlsx extensions), and Lotus 1-2-3.

**E.    Photo, audio, and video files.**

ESI comprising photographic images, audio recordings, or video recordings shall be produced as Native Files.  The extensions of such files include the .jpg, .jpeg, and .gif extensions for photographs, the .wav, .mp3, and .aiff extensions for audio recordings, and the .mpeg and .mov extensions for video recordings.  This paragraph applies only to individual files comprising photographic images, audio recordings, or video recordings and not to files containing such photographic images, audio recordings, or video recordings in addition to other content, such as e-mails or webpages.

**F.    Native Static Image files.**

All ESI files in the Tagged Image File Format ("tiff" files with the ".tif" extension) or Portable Document Format ("Acrobat" files with the ".pdf" extension) shall be produced as Native Files.

**G.    Webpage files.**

All ESI files that are intended to be viewed using web browser software shall be produced as Native Files.  Such webpage files include those with the .htm, .html, and .xml formats.  Web browser software includes Microsoft Internet Explorer, Mozilla Firefox, and Apple Safari.  All Static Images of webpage files should include any images or other content as it would appear when printing the file from web browser software.

**H.    Other ESI.**

All ESI other than the categories identified in the paragraphs above shall be produced as Native Files.   Such ESI includes PowerPoint presentations and Computer-Aided Design files.

**I.    Production of Static Images.**

All documents produced as Static Images shall be produced in black and white Group IV single page Tagged Image File Format ("tiff" files with the ".tif" extension).  For all productions of Static Images, the producing party shall include a spreadsheet file that contains a list of the Index Numbers for the first and last page of each document.  Single-page documents should have the same Index Number listed for the first and last page.  The requesting party may request that the producing party include load files for Summation, Concordance, Opticon, or similar programs rather than the spreadsheet file.

**J.    Production of load files.**

For all productions of Native Files, each party has agreed to produce load files in the formats specified on the enclosed attachments.  These load files shall include, among other things, searchable text extracted from any Native Files containing text or obtained by running an optical character recognition program on images.  The specifications for load files to be produced are attached as Exhibit B-1.  The producing party shall work with the receiving party in good faith to resolve

any technical issues with respect to load files provided by the producing party. Nonetheless, all parties acknowledge that the receiving party bears responsibility for resolving any technical issues with load files as long as they comply with the applicable specification attached to this ESI Protocol.

**6.**  <u>**Use of Native Files.**</u>

Should a party wish to use a printout of a Native File, including use at depositions, hearings, trial, and in support of filings with the Court, the party shall mark the printout at the bottom with the Index Number of the Native File followed by a unique number for each page of the document.  For example, the pages of a three-page printout of a Native File with the Index Number "SHAW000001" should be marked "SHAW000001.001", "SHAW000001.002", and "SHAW000001.003".  For any Native Files used in their native format, the using party shall identify such files by their Index Number on the record.

**Exhibit B-1**

In this lawsuit, the files should be produced in native format with extracted text/OCR files and load files according to the following specifications.

*TECHNICAL SPECIFICATIONS*

All media must have a typed (not handwritten or blank) media label according to the following requirements:

**Delivery Media**:        CD-R or DVD-R (use in combination to provide the fewest number of discs for data output) or external HDD.

**Media Labeled as**:      Name, Address and Telephone Number of entity providing media; Volume ID; Creation Date; Target export format (CD, DVD); Project Name; Bates Range; Number of Documents; Number of Pages

**Specifications for Media Format:**

**Volume ID**:        Volume ID will be {cd root} beginning with the production/bates number prefix. Use up to 4 characters followed by a 3-digit sequential number to represent the number of media volumes within the set (e.g., ABCD001, ABCD002, …). All Volume IDs should be zero padded.

**Image Format**:        If applicable, single page TIFF (standard group IV) for B&W Images, 300dpi; Single page JPEG for Color Images

**Media Folder Structure:**        Folder structure of media should consist of Volume ID\ FORMAT (i.e. NATIVES (containing all native files and native subfolders), IMAGES (containing all images and image subfolders), DATA (containing all database or technical files))\### (subfolder of FORMAT should be zero padded)\ filename.tif.

**(i.e. ABCD001\NATIVES\001\ABCD0000001.doc)**

**Extracted Text/OCR**:        For files produced to Shaw, text output should be delivered as multipage ASCII .txt files contained within the same folder as the corresponding image file. Each file should be named to correspond to the name of the image key (default is always beginning document number). All non-searchable files with no available extracted text should be OCR'd.

For files produced to REC, text output should be delivered as multipage ASCII .txt files contained within a separate file folder labeled TEXT. Each file should be

**PROTOCOL FOR ESI DISCOVERY AND PRODUCTION**                    **Page 17**
#4841-2074-9321v1

named to correspond to the name of the image key (default is always beginning document number).  All non-searchable files with no available extracted text should be OCR'd. A load file containing the control beg number and a relative path the corresponding text file should be included within the 'DATA' folder.

**Filenames:**    Production numbers/Bates labels should be used by default as filenames (without Prefix and/or Suffix unless requested).  Names can be over 8 alphanumeric characters in length and no spaces should be used.

**Image Branding:**    All electronic image numbering should be in Arial 12pt Font.

## Load File Format:

### Image Load File Format – Opticon (*.log):
Image load file should be named for its corresponding Volume ID.  The default load file format for all images is the comma-delimited Opticon *.opt or *.log file as described below.

**Field Order:**
ImageKey, Volume ID, Full path w/filename, Doc Break, Folder Break, Box Break,
Page Count

Example of an Opticon log file viewing from Media:
CLIENT000001, ABCD001, D:\Box006\CLIENT000001.tif,Y, , ,3
CLIENT000002, ABCD001, D:\Box006\CLIENT000001.tif, , , ,
CLIENT000003, ABCD001, D:\Box006\CLIENT000001.tif, , , ,
CLIENT000004, ABCD001, D:\Box006\CLIENT000001.tif,Y, , ,2
CLIENT000005, ABCD001, D:\ Box006\CLIENT000001.tif, , , ,

NOTE: The last 3 commas in the file represent Folder break, Box break, and Page count.  These columns will be left blank.  For every document break identified by the letter "Y" in the load file, provide a Page Count as shown above.

### Data Load File Format – Concordance (*.dat):
Data load file should be named for its corresponding Volume ID.  The default data load file format is *.dat as described below. Each line should represent one document.

**Field Order:**
There is no requirement for a certain field order.  Provide the field names in the first row (called Header row) of each *.dat file.

**Delimiters:**
The file delimiters let the software know when to move text to a new field.

The delimiters are:

- **Column** – the character which separates load file columns.

- **Quote** – the character which marks the beginning and end of each load file field. Also known as a text qualifier.

- **Newline** – the character which marks the end of a line in any extracted or long text field.

- **Multi-value** – the character which separates distinct values in a column. Note that this delimiter is only used when importing into a Relativity multi-choice field.

- **Nested-values** – the character which denotes the hierarchy of a choice. Note that this delimiter is only used when importing into a Relativity multi-choice field.

The default delimiter setting for all projects should be the following:

- **Column** - ASCII 020
- **Quote** - ASCII 254
- **Newline** - ASCII 174
- **Multi-Value** - ASCII 059
- **Nested Values** - ASCII 092

The following list of fields should be provided within the *.dat file:

| Field Name | Description |
| --- | --- |
| ITEMID | Unique value that identifies the record. |
| BEGDOC | Beginning bates value assigned to first page of a document |
| ENDDOC | Ending bates value assigned to last page of a document |
| BEGATTACH | Beginning bates value assigned to first page of the first document in a family group |
| ENDATTACH | Ending bates value assigned to last page of the last document in a family group |
| GROUPID | Unique value for all documents within a family (parent and child documents. This value repeats for all documents in the group. |
| PARENT_ID | Beginning bates value assigned to parent document of a document family.  This is only populated if a family is present and is only populated in the record for child documents within a family (i.e. attachments) |

| Field Name | Description |
|---|---|
| CHILD_ID | Beginning bates value assigned to attachments (children) within a family. Multiple values separated by semicolon delimiters. Only populated when a family is present and only populated in the record of the parent document in the family group. |
| PAGES | Number of pages in the document (if TIFs generated) |
| DOCTYPE | Type of document (i.e. MS Word 2007, MS Excel 2003, etc.) |
| MESSAGEID | E-mail message ID generated by Microsoft Outlook or Lotus Notes |
| SENTDATE | Date E-mail sent (YYYYMMDD format) in GMT |
| SENTDATE | Time E-mail sent (HH:MM:SS format) in GMT |
| RECEIVEDATE | Date of E-Mail receipt (YYYYMMDD format) in GMT |
| RECEIVETIME | Time of E-Mail receipt (HH:MM:SS format) in GMT |
| CREATEDATE | Creation date for E-Doc (YYYYMMDD format) in GMT |
| CREATETIME | Creation time for E-Doc (HH:MM:SS format) in GMT |
| MODIFYDATE | Last modification date for E-Doc (YYYYMMDD format) in GMT |
| MODIFYTIME | Last modification time for E-Doc (HH:MM:SS format) in GMT |
| SENDER DOMAIN | Domain of E-Mail message author |
| FROM | Author of E-Mail message |
| TO | Recipient(s) of E-Mail message |
| CC | CC of E-Mail message |
| BCC | BCC of E-Mail message |
| SUBJECT | Combination of "SUBJECT" for e-mails and "TITLE" for E-Docs. |
| FILENAME | Original name of the file (without folder path) |
| FILESIZE | Size in bytes of the file |
| MD5HASH | Hash value of the original electronic file |

| Field Name | Description |
|---|---|
| CUSTODIAN | Source custodian of the file |
| GROUPCUSTODIAN | Name of all custodians of a document to include any documents de-duplicated |
| NATIVEPATH | Path to Native document in production deliverable. Provide with relative path |
| FOLDERINFO | Original folder path/directory structure from source media (For email, include original folder path within email messaging system) |
| CONFIDENTIALITY | Indentifies whether a document is designated as "Confidential" or "Attorney's Eyes Only"  (this field to be used to brand a confidential designation on native documents that are printed) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROTOCOL FOR ESI DISCOVERY AND PRODUCTION**                          **Page 21**

**Exhibit B-2**

**SEARCH TERMS TO BE APPLIED BY SHAW IN GATHERING ESI**

1.  REC or recgroup or "Fluor/REC" or "Fluor-REC" or "REC/Fluor" or "REC-Fluor"
2.  A1XS! or A3HM!
3.  6149 or 6221 or 6307
4.  "Moses Lake" or WA or Washington
5.  ("3.0" or "4.0") and (plant or project or "purchase order")
6.  ("3.0" or "4.0") and (weld!) and (repair or "quality issue" or problem! or defect! or b31.3! or fluor or flour)
7.  "Project 3" or "Project 4" or "Purchase Order 3" or "Purchase Order 4"
8.  (Monro! or Munro! or baton) and ("root cause")
9.  Wayland and May
10. anvil
11. "applied technical" or ats
12. conam
13. harder and mech!
14. haskel!
15. northwest or NW
16. "weld-test"
17. equity and engineering
18. lewis and (don or report or study or statistic! or analy!)
19. 85-012!

Notes:
- Shaw will run search for documents created or modified January 1, 2007 or later.
- Each e-mail that is produced by either side shall include all attachments to the e-mail.

**Exhibit B-3**

**SEARCH TERMS TO BE APPLIED BY REC IN GATHERING ESI**

1. shaw!
2. A1XS! or A3HM!
3. 6149 or 6221 or 6307
4. louisiana or lousiana or monro! or munro! or baton
5. acuren or accuren or acurren
6. anvil
7. "applied technical" or ats
8. brock
9. capitol ultrasonic! or capital ultrasonic!
10. conam
11. harder /3 mech!
12. haskel!
13. imco
14. intertek
15. lamar
16. mistras
17. newtron
18. northwest or NW
19. oxarc
20. "pacific mobile"
21. spherion
22. (ss or "s&s" or "s and s") /3 paint!
23. summit
24. united /3 rental!
25. weld! /2 test! or "weld-test"
26. equity /3 engineering
27. lewis and (don or report or study or statistic! or analy!)
28. (weld!) and (spool! or pipe! or piping!)
29. (fluor or flour) and (weld! or spool! or pipe! or piping!)
30. b31.3!
31. 85-012!

Notes:
- REC will run search for documents created or modified January 1, 2006 or later.
- Each e-mail that is produced by either side shall include all attachments to the e-mail.